UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DAVID J. DOPPLER,

Petitioner,

v.

DAVID CRIST,

Respondent.

CIVIL NO. 00-490 (DWF/JMM)

REPORT AND RECOMMENDATION

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, claiming that he is being unlawfully incarcerated at the Minnesota Correctional Facility at Stillwater, Minnesota ("MCF-Stillwater"). The matter has been referred to the undersigned for a report and recommendation to the District Court pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it is recommended that the Petition for Writ of Habeas Corpus be dismissed with prejudice.

## FINDINGS OF FACT/REPORT

Petitioner was convicted of murder in the first degree and is serving a sentence of life imprisonment. The relevant factual background is as follows. On or about April 14, 1995, the body of Michael L. Sargent was found near a public access road to Little Blackhoof Lake, Crow Wing County, Minnesota. Sargent had been shot four times; once in the chin, once in his right leg, and twice in the head.

The Petitioner herein, David J. Doppler, eventually became the focus of the ensuing law enforcement investigation. On May 17, 1995, Petitioner took a polygraph test at the Bureau of Criminal Apprehension, which indicated that he might not be telling the

FILED JUL 14 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD__________
DEPUTY CLERK__________

truth about his involvement in Sargent's death. After learning of the polygraph results, Petitioner broke down, and provided a statement regarding the events occurring on April 9, 1995 to Special Agent Dave Bjerga.

Petitioner stated that he was upset with Sargent for introducing his brother to methamphetamine, and for threatening to kill his brother in front of his children. Petitioner stated that, on the date of the murder, Petitioner, Sargent, Petitioner's brother (Keith Doppler), and Petitioner's uncle (Richard Berry), decided to drive around in Petitioner's car. Petitioner stated that he had been drinking alcohol and smoking marijuana all day, and that he tried some methamphetamine during the car ride. Eventually, the parties stopped by a public access to Little Blackhoof Lake to urinate. At this time, Petitioner retrieved a gun from his car and shot Sargent. Petitioner did not mention the presence of any other weapons, and when he was asked if Sargent had said anything to him prior to the shooting, Petitioner replied, "no sir." Following this confession, Petitioner was arrested, taken to Crow Wing County Jail, and charged with murder in the second degree.

On May 19, 1995, Petitioner made his first appearance in Crow Wing County District Court. On May 22, 1995, Petitioner's attorney, Max J. Ruttger, informed the Crow Wing County Attorney, Donald Ryan, that he would move to suppress Petitioner's confession at an omnibus hearing scheduled for June 5, 1995. Ruttger and Ryan agreed that Ryan would refrain from impaneling a grand jury until the district court issued its ruling on Petitioner's suppression motion. On July 7, 1995, Petitioner's Motion to suppress his confession was denied by Crow Wing District Court Judge Frederick J. Casey.

After the suppression hearing, Petitioner's family hired a second attorney, Daniel Eller, to replace Ruttger as Petitioner's counsel. Eller resumed previously instigated plea negotiations with Ryan, but an agreement could not be reached. Petitioner subsequently entered a plea of not guilty to the charge of murder in the second degree. On September 19, 1995, four months after Petitioner's first court appearance on the murder charge, a grand jury was convened to investigate Sargent's death. The following day, Petitioner was indicted for first degree murder.

At trial, Petitioner advanced the theory that he had shot Sargent in self-defense after Sargent came at him with a knife. Petitioner, his brother, Keith Doppler, and his uncle, Richard Berry, all testified regarding the events leading up to Sargent's death. The testimony of each of these witnesses generally supported Petitioner's claim that he committed the murder in self-defense. Berry testified that, before the car stopped near the public access road, Petitioner and Sargent had argued. Soon after everyone had exited the vehicle, Berry heard a gunshot, turned around, and then saw several more flashes. Berry then went back to the car, where Petitioner told him that Sargent had attacked him with a knife, and that he shot Sargent in self defense.

Keith Doppler testified that, after exiting the car, he heard Sargent and Petitioner screaming at each other. He then heard a loud slap, and thought he heard Sargent threaten to kill Petitioner. He then heard Petitioner tell Sargent to "get away." Doppler ran towards the men, and observed a series of gunshots. Doppler, Petitioner and Berry then got into the car. Before leaving, Doppler went to check on Sargent's condition. He stated that he found a large buck knife close to the body. Doppler took the knife, along with Sargent's identification, back to the car. Doppler then folded the knife, put it into his

pocket, and later disposed of it.

Petitioner testified in his own defense. His testimony at trial differed from what he had told S.A. Bjerga during his May 17, 1995 confession. He recounted an argument with Sargent, and stated that Sargent told Petitioner that he would "get a bullet in your head like your brother." Petitioner testified that, after stopping by the access road, Sargent threatened to kill him. At this point, Petitioner returned to the car to get his gun for protection. He then noticed that Sargent was holding a knife. Sargent again threatened to kill him. Petitioner fired a warning shot into the air, to which Sargent responded "you don't have the fucking balls to use that." Petitioner then fired a shot towards the ground, and additional shots aimed higher in the air. Petitioner then got back into the car with Doppler and Berry, and drove away from the scene.

The jury found Petitioner guilty as charged. Petitioner was immediately sentenced to a term of life imprisonment. Petitioner appealed his conviction with the assistance of the Minnesota State Public Defender's Office. On appeal, a privately-retained attorney, Barry Voss, was substituted for the State Public Defender. Through Voss, Petitioner filed a Motion with the Minnesota Supreme Court seeking to remand his case to the Crow Wing County District Court for a hearing on Petitioner's claim that he received ineffective assistance of counsel. This Motion was granted. An evidentiary hearing was conducted in Crow Wing County District Court, after which Crow Wing County District Court Judge James E. Preece denied Petitioner's Motion for a new trial.

Petitioner appealed this decision to the Minnesota Supreme Court on the ground that his second attorney, Eller, was ineffective because he "(1) failed to object to the indictment issued against Doppler by a grand jury that was impaneled more than 14

days after Doppler's first court appearance, (2) failed to present evidence at trial of Doppler's intoxication, and (3) failed to request an intoxication jury instruction." State v. Doppler, 590 N.W.2d 627, 632 (Minn. 1999). Petitioner also directly appealed the underlying conviction for first degree murder on the ground that the evidence at trial was insufficient to support his guilt. The Minnesota Supreme Court denied Petitioner's appeal. Id.

After the decision against Petitioner in the Minnesota Supreme Court, he filed the instant Petition for Writ of Habeas Corpus. Petitioner asserts four grounds for relief: (1) denial of effective assistance of counsel due to counsel having a conflict of interest with the case;[1] (2) denial of effective assistance of counsel due to counsel's failure to object to an indictment issued by a grand jury impaneled more than 14 days after Petitioner's first court appearance; (3) denial of effective assistance of counsel due to counsel failing to advance an intoxication defense and/or request an intoxication jury instruction; and (4) that the evidence was insufficient to sustain the jury's verdict of premeditated murder in the first-degree. We find that Petitioner is not entitled to relief under any of the asserted grounds, and recommend that the Petition for Writ of Habeas Corpus be dismissed with prejudice.

---

1

While Petitioner describes this ground as being based on a conflict of interest, the act he complains of is the alleged disclosure of privileged information by Eller to the Crow Wing County Attorney.

## DISCUSSION

### I. STANDARD OF REVIEW

#### A. Habeas Petitions Generally

The scope of our review is governed by 28 U.S.C. § 2254 of the Anti-Terrorism and Effective Death Penalty Act of 1996, and the recent decision of the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000). Section 2254 states that a District Court may entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under Section 2254(d), a habeas corpus petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The United States Supreme Court has recently interpreted the language of Section 2254(d)(1). Williams v. Taylor, 120 S.Ct. 1495 (2000). In Williams, Justice O'Connor wrote that the "contrary to" and "unreasonable application of" clauses of Section 2254(d)(1) must be interpreted independently. Id. at 1519. Therefore, "[u]nder the statute, a federal court may grant a writ of habeas corpus if the relevant state decision was either (1) 'contrary to . . . clearly established Federal law, as determined by the Supreme Court

of the United States,' or (2) '<u>involved an unreasonable application of</u> . . . clearly established Federal law, as determined by the Supreme Court of the United States." <u>Id.</u> (emphasis in original).

With respect to the first clause, it must be remembered that "[t]he word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" <u>Id.</u> (<u>citing</u> Webster's Third New International Dictionary 495 (1976)). Therefore, a state court decision may be "contrary to" binding Supreme Court precedent in one of two ways: (1) "A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases"[2] and (2) "A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from our precedent." <u>Id.</u> at 1519-1520.

The second clause, which examines whether the state court made an "unreasonable application" of clearly established federal law, carries a different standard. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's]

---

2

For example, should a state court "reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be 'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' to [the Supreme Court's] clearly established precedent because [it] held in <u>Strickland</u> that the prisoner need only demonstrate a 'reasonable probability that . . . the result of the proceeding would have been different.'" <u>Williams</u>, 120 S.Ct. at 1519.

decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 1523. In making the "unreasonable application" inquiry, the court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 1522. Stated another way, "Under § 2244(d(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id.

To summarize, Petitioner will only be entitled to have his petition for habeas corpus granted if he can show:

1. that the state court in his case applied a rule that contradicts governing Supreme Court precedent; or
2. that his case presented facts that are materially indistinguishable from a Supreme Court decision and the state court nevertheless arrived at a different result from the Supreme Court precedent; or
3. the state court identified the correct governing legal principle in Petitioner's case, but applied that principle to the facts of his case in a way that was objectively unreasonable.

The standards set forth above must be considered in context with 28 U.S.C. §2254(e)(1), which states: "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

**B. Ineffective Assistance of Counsel Claims**

The constitutional guarantee of "effective assistance of counsel" is meant to ensure that a defendant receives a fair trial. As the United States Supreme Court held in Strickland v. Washington:

> In a long line of cases . . . this Court has recognized that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause . . . . [which guarantees] "the accused . . . the right . . . to have the Assistance of Counsel for his defense."

466 U.S. 668, 685-86 (1984) (quoting U.S. Const. Amend. VI). "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants 'ample opportunity to meet the case of the prosecution' to which they are entitled." Id. at 686 (citations omitted). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 687; accord Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.").

In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Supreme Court held that in reviewing habeas cases, a court should normally determine whether a constitutional trial

error "had substantial and injurious effect or influence in determining the jury's verdict." Id. at 638. This so-called "harmless error" analysis applies only to trial errors and not to structural defects in the proceedings. Id. at 629. Because the latter defects infect the entire trial process, they "defy analysis by 'harmless error' standards." Id. at 629-30. Consequently, structural defects require automatic reversal of a conviction. Id. The Brecht Court specifically noted that complete deprivation of counsel is a structural defect requiring automatic reversal. Id. By contrast, "[t]rial error 'occur[s] during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may . . . be quantitatively assessed in the context of other evidence presented in order to determine the effect it had on the trial.'" Id. at 629 (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991)); accord Dunnigan v. Keane, 972 F. Supp. 709 (W.D.N.Y. 1997). "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." United States v. Cronic, 466 U.S. 648, 659 (1948).

The United States Supreme Court has strictly limited the category of cases in which prejudice will be presumed. See Sherman v. Smith, 89 F.3d 1134 (4th Cir. 1996) (citing cases) ("[T]he Supreme Court has recognized that most errors do not automatically render a trial unfair and thus, can be harmless."), cert. denied, 117 S. Ct. 765 (1997). Under Strickland, prejudice is presumed to arise from ineffective assistance of counsel only in two limited circumstances: (1) where assistance of counsel is denied altogether; or (2) where counsel has an actual conflict of interest. Strickland, 466 U.S. at 692-93; Cuyler v. Sullivan, 446 U.S. 335, 345-50 (1980); Cronic, 466 U.S. at 659 & n.28.

Courts have often held that prejudice must be shown where it is alleged that an attorney failed to consult with his client on crucial decisions. Neal v. Acevedo, 114 F.3d 803, 806 (8th Cir. 1997); Harris v. Wood, 64 F.3d 1432, 1435-36 (9th Cir. 1995); McCrae v. Blackburn, 793 F.2d 684, 688 (5th Cir.), cert. denied, 479 U.S. 965 (1986); United States v. Goudy, 792 F.2d 664, 672 (7th Cir. 1986).

The reasoning of the Fourth Circuit is persuasive:

> Correctly applied, harmless error and structural error analyses produce identical results: unfair convictions are reversed while fair convictions are affirmed. Expanding the list of structural errors, however, is not mere legal abstraction. It can also be a dangerous endeavor. There is always the risk that a sometimes-harmless error will be classified as structural, thus resulting in the reversal of criminal convictions obtained pursuant to a fair trial. Given this risk, judges should be wary of prescribing new errors requiring automatic reversal. Indeed, before a court adds a new error to the list of structural errors (and thereby requires the reversal of every criminal conviction in which the error occurs), the court must be certain that the error's presence would render every such trial unfair.

Sherman, 89 F.3d at 1138.

To establish a claim of ineffective assistance of counsel under Strickland, where there is not a structural defect, a habeas corpus petitioner must make two showings: (1) that his counsel's performance was so deficient as to fall below an objective standard of reasonable competence; and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); United States v. Thomas, 992 F.2d 201, 204 (8th Cir. 1993). To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the

proceeding. Id.

A petitioner cannot satisfy the prejudice prong of Strickland by showing only that counsel's errors had "some conceivable effect" on the result, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693. Rather, a petitioner must demonstrate that absent counsel's errors, "the decision reached would reasonably likely have been different," considering the totality of the evidence. Id.

In evaluating counsel's performance, the court must be "highly deferential," indulging in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Furthermore, the defendant must overcome the presumption that "the challenged action 'might be considered sound trial strategy.'" Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Walker v. Lockhart, 852 F.2d 379, 383 (8th Cir. 1988) (counsel's trial conduct is not constitutionally ineffective "merely because other lawyers may have used another strategy"), cert. denied, 489 U.S. 1088 (1989). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. Counsel's performance is reasonably competent if he makes a strategic decision not to present a defense, after making a reasonable investigation and conferring with his client. See Sidebottom v. Delo, 46 F.3d 744, 754 (8th Cir.), cert. denied, 116 S. Ct. 144 (1995); Simmons v. State of Iowa, 28 F.3d 1478 (8th Cir. 1994), cert. denied, 513 U.S. 1178 (1995).

"Counsel's challenged conduct is to be evaluated in light of the circumstances surrounding the decision, not with the 20/20 vision of hindsight." Garrett v.

United States, 78 F.3d 1296, 1301 (8th Cir.), cert. denied, 117 S. Ct. 374 (1996). To determine whether an attorney's errors affected the outcome of a case, the Court cannot look merely at the errors alone. The effect of attorney errors can be determined only by looking at the case as a whole. Thus, "in determining the existence vel non of prejudice, the court 'must consider the totality of the evidence before the judge or jury.'" Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 695).

With these principles in mind, the Court turns to each of Petitioner's specific allegations regarding the performance of his trial counsel.

## II. PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS.

### A. Ineffective Assistance of Counsel Due to Counsel's Conflict of Interest.

Petitioner claims that he received ineffective assistance of counsel because his trial attorney, Daniel Eller, divulged information to the Crow Wing County Attorney regarding Petitioner's alleged involvement in the murder. Petitioner specifically contends that Eller told the prosecuting attorney that Petitioner's brother and uncle had been in the car with Petitioner on the evening of the murder, and that the prosecutor was not previously aware of this information. Petitioner states that he never gave Eller permission to disclose this confidential information, and that as a result, "the proceedings became thereafter tainted as the prosecutor was able to use this information to shape his case . . . against Petitioner." Petitioner's Memorandum at 4.

The District Court need not reach the merits of this claim because it was not properly presented in state court. The Court of Appeals for the Eighth Circuit has held that, "[b]efore a federal court can entertain a claim in a habeas petition, that same claim has to

have been raised in the prior state court proceedings or it must be dismissed for failure to exhaust available state court remedies." Odem v. Hopkins, 192 F.3d 772, 774 (8th Cir. 1999) (citing Keithley v. Hopkins, 43 F.3d 1216, 1218 (8th Cir. 1995)). See also 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509 (1982); Hall v. Delo, 41 F.3d 1248, 1249 (8th Cir. 1994). This requirement is based on the principles of comity and federalism, and its purpose is to give state courts the first opportunity to correct alleged federal constitutional errors that are raised by state prisoners. Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988). In order to satisfy the exhaustion requirement, the prisoner must give the state courts a "'fair opportunity' to apply controlling legal principles to the facts that are relevant to the constitutional claim." Odem, 192 F.3d at 774-75 (citing Picard v. Connor, 404 U.S. 270, 276-77 (1971)). "Thus, in addition to the recitation of all the facts necessary for the state court's evaluation of the federal claim, the petitioner has to 'fairly present' the 'substance' of his federal claim" to the state court. Odem, 192 F.3d at 775. A constitutional claim which has not been previously presented to the state courts is barred unless the petitioner can "show cause and prejudice for his failure to present this claim to the [state] courts." Poe v. Caspari, 39 F.3d 204, 208 (8th Cir.1994), cert. denied, 514 U.S. 1024 (1995).

Petitioner has not provided the dates when the confidential information was divulged, or when Petitioner learned of Eller's actions. Since Eller only represented Petitioner in pretrial proceedings, we can assume that the alleged disclosure took place prior to the start of Petitioner's trial.

In his Petition for Writ of Habeas Corpus, Petitioner acknowledges that this claim was not advanced in the Minnesota Supreme Court because his appellate counsel "decided to forgo that particular issue." Petition, at 6. However, Petitioner argues that "at a November 25, 1997 evidentiary hearing, in the Crow Wing County District Court, Petitioner did advance in the state postconviction court that he not only was deprived of effective assistance of counsel, but, that, there was also evidence of a conflict of interest between his trial attorney and the Crow Wing County Attorney." Petitioner's Memorandum at 3.

Petitioner's claim is procedurally barred, because he has not properly raised it before any state court. The record does not support Petitioner's claim that the "conflict of interest" issue was raised in connection with the November 25, 1997 postconviction proceedings. Petitioner made no reference to the issue during his testimony. Counsel for Petitioner asked Eller if he had obtained permission in writing or on the record from Petitioner to disclose the information, and when Eller answered that he hadn't, Petitioner's counsel left the subject without inquiring further. Transcript of Post-trial Motion Hearing, p. 54. The issue of whether Eller's disclosure to the Crow Wing County Attorney was unauthorized was never considered by a state court.

The decision issued by Crow Wing District Court Judge Preece on March 3, 1998 did not address the issue. That Order stated that the "hearing was in essence a Post Conviction Relief Hearing during which Defendant claimed ineffective assistance of trial counsel due to trial counsel's failure to attack the Grand Jury Indictment, failure to use an intoxication defense and failure to raise Schwartz issues connected with a newspaper

article appearing in the Brainerd Daily Dispatch on June 6, 1996." Id. at 5-6. The issue of Eller's disclosure has not been before any Minnesota state court.

"A claim not raised in the state courts will not be considered by a federal habeas court unless the petitioner can demonstrate cause for his previous failure to raise the claim and prejudice." Cornell v. Nix, 976 F.2d 376, 380 (8th Cir.)(citation omitted), cert. denied, 507 U.S. 1020 (1992). "'[C]ause . . . ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.'" Id. (quoting Murray v. Carrier, 477 U.S. 478, 492 (1986)). The factual basis for Petitioner's claim that Eller violated the attorney/client privilege was available during Petitioner's state court proceedings. The fact that, as Petitioner alleges, his post-conviction counsel decided not to bring up the issue for tactical reasons does not constitute the necessary cause. See Id. at 381 (post-conviction counsel's failure to more fully investigate a potential grounds for appeal cannot constitute cause for failure to exhaust state remedies.)

In a narrow exception to the cause and prejudice standard, a failure to raise an issue in state court will be excused "if petitioner can demonstrate that a fundamental miscarriage of justice will occur from the federal court's refusal to entertain the claim." Id. (citations omitted). To fall within this exception, Petitioner would have to show by clear and convincing evidence that, but for a constitutional error, he would not have been convicted. Id. Petitioner has not submitted any evidence that but for Eller's disclosure to the Crow Wing County Attorney he would not have been convicted of first degree murder.

We conclude that Petitioner's claim regarding the above-described "conflict of interest" was never properly asserted in state court. Petitioner has not shown cause for his failure to raise this issue in state court. He has not shown that a fundamental

miscarriage of justice will occur if we refuse to entertain this alleged grounds for relief. The state courts did not have a fair opportunity to consider Petitioner's constitutional claim. If Petitioner wanted to assert that claim, he should have done so before filing the instant Petition.

**B. <u>Ineffective Assistance of Counsel due to Failure of Counsel to Object to Grand Jury Indictment.</u>**

Petitioner argues that his trial counsel, Eller, should have challenged the grand jury indictment against him because it was obtained in violation of Minnesota Rule of Criminal Procedure 8.01. This Rule provides:

> If the offense charged in the complaint is a homicide and the prosecuting attorney notifies the court that the case will be presented to the grand jury, or if the offense is punishable by life imprisonment, the presentation of the case to the grand jury shall commence within 14 days from the date of defendant's appearance in the court under this rule, and an indictment or report of no indictment shall be returned within a reasonable time.

Petitioner specifically claims that Eller was incompetent because he should have objected to the indictment against Petitioner on the basis that the grand jury was impaneled more than fourteen days after Petitioner's first court appearance, in violation of Minn. R. Crim. P. 8.01.

The Minnesota state courts examined this issue in light of <u>Strickland</u>, and concluded that the evidence did not establish that Petitioner's trial counsel should have challenged the grand jury indictment, or that there was a reasonable probability that the outcome of Petitioner's trial would have been different if not for the alleged mistake by his counsel. Specifically, the Minnesota Supreme Court held that under the "prejudice" prong of <u>Strickland</u>, Petitioner "must show by a preponderance of the evidence that objecting to

the indictment would have changed the outcome of his trial," and that, "[t]o prevail, he must show that defense counsel cannot waive the 14-day requirement of Rule 8.01 and that, had his second attorney of record objected to the indictment, his case would have been dismissed." State v. Doppler, 590 N.W.2d 627, 634 (Minn. 1999). The court then noted that Petitioner's first attorney, Ruttger, thought that delaying the grand jury's impanelment was a "good idea," because if Petitioner's challenge to the admissibility of his May 17, 1995 confession were sustained, the case may never have been before a grand jury.

The court also found it "incongruous for Doppler to seek to benefit from a delay in impaneling the grand jury, through a pre-grand jury suppression hearing and the opportunity to fully consider a plea agreement, and then to argue that he was harmed by that delay." Id. at 634. The court concluded that the 14 day requirement of Rule 8.01 could be waived, and that Petitioner waived the requirement, and that his case would not have been dismissed if his second attorney objected to the grand jury indictment. Id. ("While Rule 8.01 itself does not specifically provide for waiver of the 14-day time requirement, the criminal rules as a whole 'are intended to provide for the just, speedy determination of criminal proceedings . . . . They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay.'")(quoting Minn. R. Crim. P. 1.02).

Petitioner has failed to establish either that Ruttger performed unreasonably by waiving the 14-day requirement of Rule 8.01, or that Eller performed unreasonably by failing to object to the indictment on those grounds. The decision to waive the requirement was a tactical decision made by Ruttger. As explained by the trial court and the Minnesota Supreme Court, there were good reasons to determine the admissibility of Petitioner's

confession before a grand jury was impaneled. Furthermore, Petitioner does not identify any basis upon which the initial decision by his first attorney, Ruttger, to waive the 14 day requirement, or the failure by his second attorney, Eller, to object to it, could have impacted the outcome of his trial. Petitioner's speculative allegations of prejudice are not supported by any evidence. The error alleged by Petitioner is not supported by the record, which indicates that Eller provided competent representation.

The Court concludes that, applying the standards set out in Williams v. Taylor and Strickland v. Washington, the decision of the Minnesota Supreme Court is not contrary to clearly established Supreme Court precedent, nor is it an unreasonable interpretation of the facts in light of Federal law as determined by the Supreme Court. 120 S. Ct. 1495 (2000); 466 U.S. 668 (1984). This is not a case in which the Minnesota Supreme Court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law, nor is it one in which the Minnesota Supreme Court decided the case differently that the Supreme Court on materially indistinguishable facts. Further, this is not a case in which the Minnesota Supreme Court unreasonably applied the Strickland test for ineffective assistance of counsel. The findings of the Minnesota Supreme Court are supported by the record, and Petitioner's ineffective assistance of counsel claim based on counsel's failure to object to the indictment should therefore be denied.

### C. Ineffective Assistance of Counsel du to Failure to Raise Intoxication and Request Instruction on Intoxication

Petitioner also contends Eller was ineffective because he failed to raise intoxication as a defense at his trial, and did not request that a jury instruction on intoxication be given. Petitioner argues that he believed part of his defense would be

based upon his intoxication at the time of the murder, but that counsel did not develop this defense at trial. Petitioner concludes that "a reasonably competent attorney knowing the facts as attorney Eller did", would have advanced intoxication as a defense, and requested an intoxication jury instruction.

The Court finds that Petitioner has failed to establish that his trial counsel unreasonably failed to raise the issue of intoxication or request that a jury instruction on intoxication be given. The Minnesota Supreme Court rejected Petitioner's contentions as follows:

> Doppler's attorney testified at the postconviction court's evidentiary hearing. From this testimony, the postconviction court noted that the attorney stated that it was "a tactical decision not to focus on intoxication as a defense because [the attorney], after discussion with [Doppler], believed it was better to focus on [Doppler's] main defense of self-defense." The postconviction court also found that the attorney "did present evidence and final argument" on the issue of intoxication to the jury.
>
> We agree with the postconviction court that the attorney's decision not to "focus on intoxication as a defense" provides no basis for relief. See Jones, 392 N.W.2d at 236.[[3] ] The attorney's failure to request an intoxication jury instruction was a matter of trial strategy. See id. As previously stated, we do not review for competence matters of trial strategy. See id.; see also Strickland, 466 U.S. at 693, 104 S.Ct. 2052.

Doppler, 590 N.W.2d at 635.

---

3

In State v. Jones, 392 N.W.2d 224 (Minn. 1986), the court held that the petitioner's arguments that his counsel should have sought a change of venue, should have hired an investigator, and should have interviewed prospective witnesses, did not allege errors in professional performance but instead related to trial strategy. "Which witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of the trial counsel. Such trial tactics should not be reviewed by an appellate court, which, unlike the counsel, has the benefit of hindsight." Id. at 236.

We review this factual determination under 28 U.S.C. § 2254(e)(1), which provides that, "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1).

Petitioner has not presented sufficient evidence to rebut the presumption of correctness to which the Minnesota Supreme Court's finding of fact is entitled. The record indicates that Eller's failure to request an instruction on intoxication or focus heavily on the issue at trial was a tactical decision, and that Petitioner supported this decision.

At the November 27, 1997 Post-Conviction hearing, Eller was asked about his decision not to rely on intoxication at trial:

> Q: You heard some testimony about an intoxication defense, did you and Mr. Doppler ever discuss the possibility of presenting an intoxication defense?
>
> A: To tell you the truth, I knew what he had said in his statement to the BCA and I knew what he had told me about the fact that Sargent had had some crank with him or whatever. And somewhere in the course of the evening, David said he had tried some and that was usual for him, so I knew there were issues in it. But to tell you the truth, I don't remember David and I actually sitting down and saying, "you can use an intoxication defense" because that wasn't what we intended to do. The defense we had was that he was acting in self-defense. Intoxication didn't have a whole lot to do with that, so . . .
>
> Q: So the case you presented was a self defense case?
>
> A: Correct. Typically, if there is an issue of intoxication, I would try to make a record of it.

Transcript, Motion Hearing, November 27, 1997, at 45-46.[4]

Petitioner does not offer any evidence which would indicate that Eller's failure to raise the defense of intoxication and to request a jury instruction on that issue were "anything other than strategic decisions made by counsel." " Nielsen v. Hopkins, 58 F.3d 1331, 1337 (8th Cir.1995) (Supreme Court of Nebraska found that counsel's failure to obtain expert witness testimony for defense on issue of intoxication was a matter of trial strategy; court of appeals declined "to second-guess counsel's strategic decision on collateral review."). There is no evidence upon which to conclude that Eller made anything other than a reasoned, strategic decision not to raise the defense of intoxication or request that a jury instruction be given on that issue. This Court cannot conclude that Eller's performance was unreasonable under the first prong of Strickland. The District Court should reject Petitioner's claim that Eller's strategic choice violated the Sixth Amendment.

## III. SUFFICIENCY OF THE EVIDENCE

Petitioner also argues that he is entitled to habeas relief because a jury could not have concluded that Petitioner's killing of Sargent was premeditated. Petitioner states that the "overwhelming evidence of Petitioner's intoxication in this case unequivocally shows that Petitioner was too intoxicated to premeditate his killing of Mr. Sargent." Petitioner's Memorandum, at 7.

---

4 In fact, while cross-examining Special Agent Bradley Barker at trial, Eller did elicit information regarding Petitioner's intoxication on the date of the murder. Trial Transcript, Volume I, at 121 ("David said he was – that he had been drinking heavily that date, that he had been drinking gin and grapefruit juice . . . David said he finally did use some of the methamphetamine, on top of smoking marijuana and also the drinking that he had done that day.").

"The Due Process Clause prohibits the conviction of an accused 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir.1998). "In reviewing a challenge to the sufficiency of the evidence, we must determine not whether we believe the evidence establishes guilt beyond a reasonable doubt, but instead 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Thomerson v. Lockhart, 835 F.2d 1257, 1259 (8th Cir. 1987) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Additionally, where the petitioner's challenge to the sufficiency of the evidence is rejected by the state supreme court, "[t]hat decision is entitled to deference by [a federal habeas] court." Thomerson, 835 F.2d at 1259 (citing Jackson, 443 U.S. at 323). See also Ellis v. Black, 732 F.2d 650, 652 (8th Cir. 1984) ("a state appellate decision as to the sufficiency of the evidence is entitled to deference.").

In Minnesota, an individual is guilty of first-degree premeditated murder if he or she causes "the death of another human being with premeditation and with intent to effect the death of the person or of another." Minn. Stat. § 609.185(1). The Minnesota supreme court noted that Petitioner admitted to killing Sargent and that it was his intent to do so. Therefore, the only issue was whether the jury could have reasonably concluded that the murder was premeditated. The court found that Petitioner's confession on May 17, 1995, "detailed how [Petitioner] returned to the car after he and Sargent got out to go to the bathroom, grabbed the gun that was underneath the driver's seat of the car, and shot Sargent." Also significant was Petitioner's statement to BCA Agents that he formed the intent to kill Sargent after exiting the car. Further, the prosecution established that

Petitioner had a motive to kill Sargent, as he was upset with Sargent for introducing his brother to drugs, and for threatening to kill his brother in the presence of his children. Finally, the court found that "the jury could certainly have disbelieved Doppler's claims of self-defense, which he raised for the first time at trial and which contradicted his confession and the crime scene investigators' statements that Sargent's body and the crime scene bore no signs of a struggle." The court concluded that "the state presented evidence sufficient to support the jury's verdict finding Doppler guilty of premeditated first-degree murder." State v. Doppler, 590 N.W.2d 627, 635 (Minn. 1999).

On this record, we cannot conclude that no rational jury could have found that Petitioner committed the crime of premeditated first-degree murder. The reasoning and findings of the Minnesota Supreme Court are sound. Petitioner does not take issue with any aspect of those findings, and instead argues that his level of intoxication precluded any rational jury from concluding that he was able to form the intent to kill Sargent. Petitioner's claim is contradicted by the following testimony given by Petitioner during his trial:

> Q: Now, in your confession on May 17th, you admitted to law enforcement that you had tried some meth; correct?
>
> A: Yes, sir.
>
> Q: And you told law enforcement that you thought you could take on the world after that, didn't you?
>
> A: Yes, Sir.
>
> Q: And that's, in fact, how you felt, wasn't it?
>
> A: I don't believe that I was too much affected by the small amount I took.
>
> Q: So, in your confession, when you said because of the meth you felt you could take on the world, you weren't telling

the truth?

A: No, sir.

Trial Transcript, Volume I, at 220-221.

This testimony weakens Petitioner's claim that he could not form the requisite premeditation due to intoxication. Petitioner's admission that the methamphetamine did not significantly affect him casts doubt upon his claims that his judgment was impacted by other substances.

Additionally, the jury heard testimony regarding Petitioner's level of intoxication on the day of the murder, and presumably considered that information in reaching its decision. The jury also heard a substantial amount of evidence that pointed to Petitioner's guilt. Dr. McGee, the medical examiner who examined Sargent's body, testified that in his opinion the gun shot wounds were indicative of a scenario where someone was defending himself against Sargent. Trial Transcript, p. 142, l. 17 - p. 143, l. 1. Petitioner testified that, on a date prior to the shooting, he had jokingly asked a friend how much is would be worth if Petitioner would get rid of Sargent. Trial Transcript, p. 195, l. 9-22. Special Agent Barker testified that, during the course of Petitioner's confession, he stated that he started thinking about shooting Sargent when they got out of the car to urinate. Trial Transcript, p. 123, l. 21 - p. 124, l. Baker also testified that Petitioner did not mention a knife or self-defense at any time while he was speaking to him. Trial Transcript, p. 124, l. 4-9.

In the absence of any showing that the Minnesota supreme court's decision was factually or legally flawed, or that no rational jury could find that Petitioner was guilty of the crime charged, we conclude that Petitioner's challenge to the sufficiency of the

evidence should be rejected. Viewed in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the element of premeditation was present beyond a reasonable doubt.

## RECOMMENDATION

For the reasons set forth above, it is recommended that Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1] be dismissed with prejudice.

Dated: July 14, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **July 27, 2000** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.